**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sally Le, wife, and Cuong Le, husband,<br><br>    Plaintiffs,<br>v.<br><br>State Farm Fire and Casualty Company, a foreign corporation; et al.,<br><br>    Defendants. | CV 22-00044-TUC-SHR (LAB)<br><br>**REPORT AND RECOMMENDATION** |

    Pending before the court is a motion to confirm appraisal award, filed on February 23, 2022, by the plaintiffs, the Les. (Doc. 11)  Also pending is a motion to vacate award, filed on April 1, 2022, by the defendant State Farm. (Doc. 25)

    The case has been referred to Magistrate Judge Bowman for report and recommendation pursuant to the Local Rules of Practice.  LRCiv 72.1.

    The court finds that the appraisal award should be confirmed pursuant to A.R.S. § 12-1511.

Background

    The Les own a rental property on E. Beverly Street in Tucson, Arizona. (Doc. 1-3, p. 2), (Complaint)  The property was damaged by fire on or about May 2, 2020. (Doc. 1-3, p. 3)  The Les reported the fire to their insurer, State Farm, which accepted coverage. *Id.*, p. 4  State Farm paid approximately $63,300 on the claim. *Id.*, p. 5  The Les disagreed about the amount of damages and asserted their right to an appraisal pursuant to the terms of the insurance policy.

*Id.*, p. 5  An appraisal was conducted by two appraisers and an "umpire" in accordance with the policy terms.  (Doc. 11, p. 3)

On September 21, 2021, the appraisal panel issued an award that assessed the "replacement cost" at $193,509.49 and the "actual cash value" at $177,398.90.  (Doc. 1-3, p. 5);  (Doc. 11-1, p. 91)  The original award contains the following language:  "We have appraised the above aforementioned property as pertaining to 'Scope and Pricing' only and without appraisal of 'Cause and Origin' or of 'Policy Coverage'."  (Doc. 11-1, p. 91)  The Les queried this statement because it appeared to ignore the purpose of the valuation, which was to determine the damages due to the fire.  (Doc. 11, p. 4)  Their counsel contacted the panel and requested a modification of the language in the award.  *Id.*; (Doc. 11-1, pp. 87-88) State Farm opposed any modification. (Doc. 11-1, p. 96) On December 2, 2021, Sam Fernandez, the Les' appraiser, responded to the Les' counsel as follows: "We as a panel appraised the fire loss, and the associated value from the cause of loss (fire and smoke); we purposefully did not go into any other issues or problems and only valued items that were from this loss." (Doc. 11-1, p. 95);  (Doc. 25, p. 5)

On December 24, 2021, the appraisal panel issued a "Corrected Appraisal Award" that contains the following passage:

> We have appraised the above aforementioned property as pertaining to "Scope and Pricing" without appraisal of "Policy Coverage."  The Scope and Pricing determinations that follow include only those damages that we determined were caused by the fire loss at issue in this claim.

(Doc. 11-1, p. 2) State Farm objected to the panel's award but paid the Les a supplemental sum of $27,767.99.  (Doc. 1-3, pp. 5-6); *but see* (Doc. 25, p. 21)  (arguing that the $27,767.99 was too large and requesting "recoupment")  State Farm maintains that the appraisal award included certain items that were not damaged by the fire and were not covered by the policy.  State Farm's supplemental payment addressed those items that appeared to be caused by the fire but for which the appraisal returned a higher loss value than State Farm's previous evaluation.

On December 27, 2021, The Les filed suit in Pima County Superior Court against State Farm claiming breach of contract and breach of the duty of good faith. (Doc. 1-3) On January 26, 2022, State Farm removed the action to this court. (Doc. 1) On February 23, 2022, the Les filed the pending motion to confirm the appraisal award pursuant to A.R.S. § 12-1511. (Doc. 11) On April 1, 2022, State Farm filed a combined response and motion to vacate award pursuant to A.R.S. § 12-1512. (Doc. 25) The Les filed a combined reply and response on April 22, 2022. (Doc. 34) State Farm filed a reply on May 20, 2022. (Doc. 42)

A hearing on the motions was held on August 31, 2022.

Discussion

The Les argue that this court should confirm the appraisal pursuant to A.R.S. § 12-1511. The statute reads as follows:

> A party seeking confirmation of an award shall file and serve an application therefor in the same manner in which complaints are filed and served in civil actions. Upon the expiration of twenty days from service of the application, which shall be made upon the party against whom the award has been made, the court shall enter judgment upon the award unless opposition is made in accordance with § 12-1512.

Section 12-1512 reads in pertinent part as follows:

> Upon filing of a pleading in opposition to an award, and upon an adequate showing in support thereof, the court shall decline to confirm and [sic] award and enter judgment thereon where:
>
> 1. The award was procured by corruption, fraud or other undue means;
>
> 2. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
>
> 3. The arbitrators exceeded their powers;
>
> 4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 12-1505, as to prejudice substantially the rights of a party; or
>
> 5. There was no arbitration agreement and the issue was not adversely determined in proceedings under § 12-1502 and the adverse party did not participate in the arbitration hearing without raising the objection . . . .

1   "Generally, in the absence of fraud or mistake the action of an arbiter empowered by a contract or statute to construe and determine its conditions is final and conclusive upon the parties." *Park Imperial, Inc. v. E. L. Farmer Const. Co.*, 9 Ariz. App. 511, 513–14, 454 P.2d 181, 183–84 (1969). "If it were otherwise, the ostensible purpose for resort to arbitration, *i.e.*, avoidance of litigation, would be frustrated." *Id.* Accordingly, "the trial court [is] required to view the arbitration award in a light most favorable to upholding the said award. . . ." *Id.*

"[A]n arbitration award is not subject to attack merely because one party believes that the arbitrators erred with respect to factual determinations or legal interpretations." *Hirt v. Hervey*, 118 Ariz. 543, 545, 578 P.2d 624, 626 (Ct. App. 1978). "Apart from questions of fraud or corruption, the decisions of the arbitrators on questions of fact and of law are final and conclusive, except when they conflict with express guidelines or standards set forth or adopted in the arbitration agreement." *Id.* (punctuation modified)  And the court will presume "that arbitrators decided only those issues submitted for arbitration." *Einhorn v. Valley Med. Specialists, P.C.*, 172 Ariz. 571, 573 (App. 1992).

Here, the appraisal was conducted in accordance with the terms of the insurance policy. *See* (Doc. 11-1, p. 83)  ("If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. . . .")  The Les named Sam Fernandez of North Valuation Group (NVG) as their appraiser. (Doc. 25, p. 5)  State Farm named Adam Salene as its appraiser. *Id.*  Fernandez and Salene named Amy Lieberman as umpire. *Id.*, p. 6  Two members of the panel, Fernandez and Lieberman, submitted a written Appraisal Award setting the "amount of loss" due to the fire. (Doc. 11-1, p. 83);  (Doc. 11-1, pp. 2, 85)  A Corrected Appraisal Award was issued on or about December 24, 2022. (Doc. 11-1, p. 2) Pursuant to statute, this court should confirm the apprisal unless State Farm can make an "adequate showing" as to why confirmation should not occur pursuant to A.R.S. § 12-1512. *See Atreus Communities Grp. of Arizona v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, 277 P.3d 208, 211 (App. 2012) ("Because Arizona's public policy favors arbitration to obtain a speedy

and inexpensive disposition of a dispute, judicial review of an arbitration award is severely limited by statute.").

State Farm maintains first and foremost that confirmation should not occur because it is entitled to determine issues of coverage, not the appraisers. State Farm relies primarily on the case *6700 Arrowhead Owners Ass'n v. State Farm Fire & Cas. Co.*, No. CV-12-1677-PHX-DGC, 2012 WL 5868969 (D. Ariz. Nov. 19, 2012). It is instructive to examine that case in some detail.

In *Arrowhead*, the plaintiff owned a condominium that suffered hail damage. *Id.* at *3. The plaintiff's insurer paid the plaintiff a certain sum to compensate for loss due to the hail but did not pay anything for damage to the bitumen roofs or the north and west exterior elevations because the insurer determined that the damage in those locations was not caused by hail and was not covered. *Id.*, p. *1. The plaintiff subsequently brought suit and filed a motion to compel appraisal arguing that all damages should be submitted for an appraisal even those damages that the insurer found were not covered. *Id.*

The *Arrowhead* court explained that "submitting the whole claim for appraisal will cause the appraiser to make determinations about the scope of coverage under the insurance policy rather than simply determining the amount of damage." *6700 Arrowhead Owners*, 2012 WL 5868969, at *2. "This distinction is important, because in Arizona appraisers only determine the amount of damage and do not resolve questions of coverage." *Id.* "Furthermore, in Arizona an arbitrator cannot resolve issues which go beyond the scope of the submission agreement." *Id.* (punctuation modified).

The *Arrowhead* court then granted the plaintiff's motion to compel arbitration but instructed that the "appraiser's opinion shall be itemized to preserve Defendant's ability to assert the coverage issues already raised by Defendant in the parties' communications." *Id.* at *3. The court explained that "[s]hould Defendant choose to litigate coverage issues after the appraisal—something it is entitled to do—an itemized appraisal preserves that option while still allowing Plaintiff to invoke its contractual right to an appraisal." *Id.*

State Farm maintains that *Arrowhead* stands for the proposition that once an appraisal award is submitted, the insurer is entitled to challenge any item of damage that the insurer believes is not covered. State Farm asserts that the appraisal in this case cannot be confirmed because it has not yet had a chance to address each item of damage and argue that that item is not covered. The court does not agree.

In the view of this court, *Arrowhead* stands for the proposition[1] that where there are issues of whether an item if damage is covered or not, the parties may conduct an appraisal in a manner that avoids the issue entirely. *See, e.g., Speros v. Sentinel Ins. Co. Ltd.*, 2018 WL 1536389, at *2 (D. Ariz. 2018) (Where "multiple events occurred and caused damage to Plaintiff's property but . . . Defendant agreed to cover only one event," the appraisers set forth damages "in the alternative" so the finder of fact could resolve the issue later.). For example, in this case, State Farm apparently believed that losses due to fire were covered but losses due to "hard living" or "wear and tear" were not. (Doc. 25, p. 5) The Les suggested that some of the damage could have been caused by vandalism, which might also be covered. Under *Arrowhead*, the appraisers could have been instructed to evaluate all elements of damage without opining as to the cause of the damage or whether it was covered under the policy. Then, the parties could take the appraisal and litigate the issue of coverage for each item. That, however, was not done here.

---

[1] *Arrowhead* is a district court opinion and is not binding on this court. *Camreta v. Greene*, 563 U.S. 692, 709, n. 7, 131 S. Ct. 2020, 2033, n.7 (2011). And even if it were, this court finds that case distinguishable. When state law provides the rule of decision, "a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). Here, that is the Arizona Supreme Court. That court's pronouncements in this particular area of law unfortunately are thin on the ground. Accordingly, this court relies for the most part on the next best thing, the decisions of the Arizona Court of Appeals. *Id.*

Apparently, the appraisers here were instructed to opine as to the amount of damage *caused by fire*.[2] (Doc. 11-1, p. 95)  And the appraisers returned a report in accordance with those instructions. (Doc. 11-1, p. 2)  The appraisers did not exceed the scope of their mandate and make a coverage determination; that would be improper. *See Hanson v. Com. Union Ins. Co.*, 150 Ariz. 283, 286, 723 P.2d 101, 104 (Ct. App. 1986) ("It is certainly not [the appraisers'] function to resolve questions of coverage and interpret provisions of the policy."). The coverage determination was made before the appraisal was commissioned:  Fire is covered; "hard living" and "wear and tear" are not. *See* (Doc. 25, pp. 5-6)  The appraisers simply adopted that determination and determined the amount of loss. *See  Harvey Prop. Mgmt. Co. v. Travelers Indem. Co.,* 2012 WL 5488898, at *5 (D. Ariz. Nov. 6, 2012)  (Where the parties agreed that wind and hail was covered but improper handling and installation was not, it was proper to allow the appraisers to decide "a question of fact – what is the amount of the claimed loss that [was] covered under the policy's coverage for wind and hail."); *Klein v. Safeco Ins. Co. of Am.*, 2021 WL 3518639, at *4 (D. Ariz. Mar. 31, 2021)  ("The appraisal process can properly resolve the resulting amount of damage to Plaintiffs' roof from the November 2019 storm."); *Ori v. Am. Fam. Mut. Ins. Co.*, 2005 WL 3079044, at *4 (D. Ariz. Nov. 15, 2005) (The "amount of loss" due to fire was a proper subject for arbitration.); *Nelson v. State Farm*, CV 2020-007110, (Maricopa County Superior Court, Nov. 10, 2020),  (Doc 11-1, pp. 103-105) (The appraisers only included damages from the covered water events, and therefore the insurer was not permitted to argue afterwards that certain damages were caused by tile removers.); *but see Hanson v. Com. Union Ins. Co*., 150 Ariz. 283, 286, 723 P.2d 101, 104 (App. 1986)

---

[2]  In the alternative, State Farm might have avoided the appraisal process all together if this is a case where a "significant portion of the Plaintiff's claim" might not be covered under the policy. *See San Souci Apartments v. Nat'l Sur. Corp.*, No. CV-12-2389-PHX-GMS, 2013 WL 428091, at *2 (D. Ariz. Feb. 4, 2013)  (Where the parties disagreed about whether the roof tiles were damaged by the hail storm, the court would not compel appraisal.).

(Appraisal should not have been confirmed where the award not only determined loss due to fire but also considered policy deductibles, credits, and offsets, which were issues of coverage.).

State Farm cannot now go through the appraisal and pick out those items that it believes were not caused by fire in the guise of litigating the issue of coverage. That would defeat the purpose of the appraisal process. *See Park Imperial, Inc. v. E. L. Farmer Const. Co.*, 9 Ariz. App. 511, 513–14, 454 P.2d 181, 183–84 (1969) ("The ostensible purpose for resort to arbitration" is "avoidance of litigation."). It would run counter to the statutory scheme. *See Atreus Communities Grp. of Arizona v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, 277 P.3d 208, 211 (App. 2012) ("Because Arizona's public policy favors arbitration to obtain a speedy and inexpensive disposition of a dispute, judicial review of an arbitration award is severely limited by statute."). It would be contrary to the policy language. *See* (Doc. 11-1, p. 83) ("Written agreement signed by any two of these three [panel members] shall set the amount of the loss."). And it would unfairly give State Farm an opportunity to litigate an issue that is effectively denied to the Les.

If the court were to accept State Farm's argument, State Farm would be able to challenge those items of damage that the appraisers found were caused by the fire. Presumably, the Les would then have the right to challenge those items that the appraisers found were *not* caused by fire. But the appraisal only lists those items that the appraisers found were caused by the fire. It does not list all the things that the appraisers thought were *not* caused by the fire. Unless the appraisers are specifically instructed to list all elements of damage regardless of their cause (which apparently was not done here)[3], they will only list covered damage, which here is

---

[3] When the Les demanded appraisal through AAB, State Farm replied as follows: "As we proceed, please be advised appraisal panels in Arizona do not have authority to make determinations on coverage issues. Thus, any issues you wish to raise regarding coverage for additional items outside the scope listed* in this correspondence, cannot be addressed at appraisal. Hence, State Farm will insist upon an itemization of any amounts comprising the appraisal award in accordance with Arizona law. Any un-itemized award may prevent State Farm from determining the amount of additional payment due, if any, for covered damage."

- 8 -

damage caused by fire. Now this is fine if you want to challenge those items; they are all listed in the appraisal in convenient form. But if you want to challenge those items that the appraisers did *not* think were caused by the fire, you are out of luck. They are not in the appraisal. Instructing the appraisers to determine the loss due to fire and then giving the insurer the chance to dispute all items that may have been erroneously put down as caused by fire prejudices the insureds because they cannot effectively do the opposite. They cannot challenge those items of damage that the appraisers did not think were caused by the fire; those items of damage were not recorded.

At the hearing, State Farm asked rhetorically when coverage issues would be decided if not after the appraisal. Here, the decision to cover fire damage was made before the appraisal, and the determination of the loss due to that fire was made at the appraisal. The rationale behind the appraisal process would be defeated if either party were given a second bite at the apple after appraisal. *See Atreus Communities Grp. of Arizona v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, 277 P.3d 208, 211 (App. 2012) ("Arizona's public policy favors arbitration to obtain a speedy and inexpensive disposition of a dispute . . . ."); *Park Imperial, Inc. v. E. L. Farmer Const. Co.*, 9 Ariz. App. 511, 513–14, 454 P.2d 181, 183–84 (1969) ("[T]he ostensible purpose for resort to arbitration" is "avoidance of litigation.").

State Farm further argues that the appraisers exceeded their authority by including in the Award damage due to water and hazardous material. (Doc. 42, pp. 8-9); (Doc. 25, pp. 10-12) At the hearing, State Farm asserted that the appraisers included damage due to vandalism. These argument are directly contradicted by the statement in the Corrected Appraisal Award that "[t]he Scope and Pricing determinations that follow include only those damages that we determined were caused by the fire loss at issue in this claim." (Doc. 11-1, p. 2); (Doc. 34, p.

---

(Doc. 26-1, pp. 101-102) It appears that the appraisers were instructed to itemize loss due to fire only.

\* The document references "coverages A and B" without further elaboration. (Doc. 26-1, p. 101) It appears that Coverage A and Coverage B include "damages from the fire" but not theft, "mysterious disappearance," vandalism, etc. (Doc. 26-1, p. 95)

- 9 -

6) State Farm further argues that it was improper for the plaintiff's counsel to ask that the Appraisal Award be modified because that request "called upon the appraisal panel to weigh in on a legal issue (i.e., whether certain damages were caused by a covered loss)." The court does not agree. The plaintiff's counsel only asked the appraisers to provide a statement of fact clarifying what losses they included in the Award. The appraisers explained that they included only loss due to fire. They did not decide that loss due to fire was covered by the policy. State Farm decided that. *See Einhorn v. Valley Med. Specialists, P.C.*, 172 Ariz. 571, 573, 838 P.2d 1332, 1334 (Ct. App. 1992) ("[I]t is presumed the arbitrator decided only the matters submitted for arbitration unless the party seeking review carries the burden of showing otherwise."); *see also Harvey Prop. Mgmt. Co. v. Travelers Indem. Co.,* 2012 WL 5488898, at *5 (D. Ariz. Nov. 6, 2012) (Where the parties agreed that wind and hail was covered but improper handling and installation was not, it was proper to allow the appraisers to decide "a question of fact – what is the amount of the claimed loss that [was] covered under the policy's coverage for wind and hail.")

The court notes that the statutory scheme explicitly allows for an award to be modified. A.R.S. § 12-1509 provides that "[o]n application of a party . . . the arbitrators may modify or correct the award" . . . "for the purpose of clarifying the award." It appears that there is nothing inherently suspect in a party requesting that the arbitrators clarify their Award.

State Farm further asserts that the appraisers included damages apart from the fire because the panel relied on an estimate from "NVG," North Valuation Group, that contains "WTR" and "HMR," spread sheet codes that suggest costs were included for "wet dry wall," "wet insulation" removal, or decontamination. (Doc. 42, p. 9); (Doc. 25, pp. 5, 12) These damages, it argues, could not have been caused by the fire. The plaintiffs, however, explain that these codes are simply artifacts of the Xactimate software, which returns default verbiage to describe the removal of hazardous materials. (Doc. 34, p. 6) And the insulation and drywall were considered hazardous material due to smoke damage, not because of asbestos, lead, or mold. *Id.*

As the court explained above, "an arbitration award is not subject to attack merely because one party believes that the arbitrators erred with respect to factual determinations or legal interpretations." *Hirt v. Hervey*, 118 Ariz. 543, 545, 578 P.2d 624, 626 (Ct. App. 1978). Even if the arbitrators incorrectly found that the drywall or the insulation was damaged by the fire and needed to be replaced, this is not a valid reason for vacating the Award. Furthermore, in light of the appraisers' explicit statement that they only considered loss caused by fire and viewing the arbitration award in the light most favorable to upholding that award, the court finds that the appraisers did not include in the award losses not caused by the fire. *See Park Imperial, Inc. v. E. L. Farmer Const. Co.*, 9 Ariz. App. 511, 513–14, 454 P.2d 181, 183–84 (1969) ("[T]he trial court was required to view the arbitration award in a light most favorable to upholding the said award.").

State Farm further argues that the appraisers showed poor judgment when concluding that soot damaged items needed to be replaced rather than just cleaned. (Doc. 42, pp. 11-12); (Doc. 25, pp. 12-13)  An appraisal award, however, is not subject to attack based on a disagreement as to the amount of loss. *See Hirt v. Hervey*, 118 Ariz. 543, 545, 578 P.2d 624, 626 (Ct. App. 1978).

State Farm also asserts that the appraisal panel exceeded its authority by considering issues that were not disputed. (Doc. 25, p. 14-17) For example, the panel calculated overhead, profit, and tax issues differently from the way State Farm and the plaintiffs' public adjuster dealt with them. State Farm argues that these items were not in dispute and the appraisal panel exceeded its authority by dealing with them a different way.

The court agrees that the appraisal panel could have been instructed to deal with these issues in the same way that State Farm and the plaintiffs' public adjuster understood them prior to the appraisal. State Farm, however, does not show that the panel was so instructed. Therefore, this court does not find that the panel acted in excess of its authority.

State Farm maintains that the Award should be vacated because of "misconduct prejudicing the rights of a party." (Doc. 25, p. 18)  According to State Farm, "[i]t is no

coincidence the NVG award mirrors the AAB estimate in its organization." (Doc. 25, p. 19) This is because "AAB supplied NVG with an Xactimate computer file (.ESX) to allow it to copy AAB's underlying work in the Xactimate software." *Id.* The result, State Farm alleges, was "[i]mproper coordination." *Id.* It is not entirely clear what State Farm is arguing here.

The AAB (Associated Adjustment Bureau) was the Les' public appraiser. (Doc. 25, p. 4) The AAB's original estimate of the fire damage exceeded State Farm's. *Id.* That is why the Les chose arbitration. In accordance with the policy's arbitration provision, the Les named Sam Fernandez of North Valuation Group (NVG) as their appraiser. (Doc. 25, p. 5) It would not be too surprising if the Les chose as their appraiser someone who was predisposed to agreed with the AAB estimate. State Farm seems to be arguing that the Les should have chosen someone who would be neutral. That, however, is not the way appraisal operates. In accordance with the policy, each party chooses an appraiser and the two appraisers choose an "umpire," who presumably might be called *neutral*, for want of a better adjective. *See* (Doc. 11-1, p. 83) There is no requirement that each party choose for herself an appraiser who will be neutral. *Id.*

State Farm further argues that the NVG estimate made use of Xactimate software codes that made it difficult to determine what actually caused the loss. (Doc. 25, p. 20) This, State Farm argues, resulted in improper "concealment." *Id.* The court does not agree. The appraisers are presumably experts in damage remediation and should be well versed in the operation of the Xactimate software. If State Farm's appraiser believed that the Les' appraiser was using the software to conceal important information, he could have raised the issue with the umpire, Amy Lieberman. State Farm does not allege that he was prevented from doing so.

Finally, State Farm asserts that the plaintiffs' counsel "infect[ed] the panel" by asking them to clarify that they included in the Award only loss due to fire. The court does not agree. As the court noted above, A.R.S. § 12-1509 provides that a party may request that the arbitrators "modify or correct" the award "for the purpose of clarifying the award." It appears that asking the panel for clarification is permitted.

RECOMMENDATION

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

GRANTING the plaintiffs' motion to confirm appraisal award, filed on February 23, 2022 (Doc. 11), and DENYING the defendant's motion to vacate award, filed on April 1, 2022 (Doc. 25).

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation.   If objections are not timely filed, the party's right to de novo review may be waived.  The Local Rules permit the filing of a response to an objection.  They do not permit the filing of a reply to a response without the permission of the District Court.

DATED this 7th day of September, 2022.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge