LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL AVENUE, 16TH FLOOR
PHOENIX, ARIZONA 85004
(602) 271-7700

Tyler M. Abrahams/Bar No. 024931
Email: tma@bowwlaw.com
Notices to: jmm@bowwlaw.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sally Le and Cuong Le, wife and husband,<br><br>Plaintiffs,<br><br>vs.<br><br>State Farm Fire and Casualty Company, a foreign corporation; John and Jane Does I-X; and Black and White Business Entities I-X,<br><br>Defendants. | NO. CV22-00044-TUC-SHR (MAA)<br><br>**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO PRECLUDE EVIDENCE OF UNRELATED CLAIMS AND LAWSUITS**<br><br>*(Assigned to Magistrate Michael A. Ambri and Judge Scott H. Rash)*<br><br>(Oral Argument Requested) |

Defendant State Farm Fire and Casualty Company ("State Farm"), through counsel, moves this Court for an order to preclude Plaintiffs from introducing lay or expert testimony or records regarding unrelated, non-binding, and non-final/non-appealable insurance claims and lawsuits asserted by non-parties and/or arising out of different insurance contracts subject

to different states' laws.  Plaintiffs have disclosed ten unrelated claims thus far, and has asked for discovery into countless more.

Plaintiffs have disclosed an expert opinion from Joseph Watkins regarding an alleged "pattern and practice relative to State Farm's claims handling of the Les' fire loss." In support of this theory, Plaintiffs have disclosed claim files associated with six unrelated insurance claims and non-binding lawsuits asserted by non-parties.[1]  Plaintiffs have disclosed the names of four more unrelated claims for which they have not disclosed any claim file.  Taken together, these ten unrelated claims are hereafter referred to as the "unrelated claims". Plaintiffs intend to offer evidence regarding such extraneous claims at trial. Plaintiffs argue that any "evidence" that State Farm acted in bad faith in <u>other</u> non-final and unrelated claims and lawsuits proves and/or exacerbates the bad faith and breach of contract claims alleged as to <u>Plaintiffs'</u> specific insurance claim.

However, evidence of unrelated claims/lawsuits is irrelevant and inadmissible to prove State Farm breached <u>this</u> insurance contract or acted unreasonably in handling <u>this</u> claim. Introducing this fact and opinion evidence (and conducting the mini-trials that will be necessary to prove both that the circumstances are comparable and that the bad faith actually occurred in those other circumstances) will waste time and mislead and confuse the jury. The arguments and evidence are also improper and prejudicial to State Farm because they suggest Plaintiffs' claim and lawsuit should be decided on the facts or circumstances of other claims and lawsuits rather than its own merits.

Moreover, if Plaintiffs' proposed discovery and testimony is permitted, it will place an

---

[1] Plaintiffs have also issued written discovery demanding information about an extraordinary and untold number of additional, unrelated insurance claims.  For instance, "Identify by city… the total number of State Farm Appraisals in Arizona where the appraisal award or decision was rendered between January 2018 and present."  See Plaintiffs' Request for Production and Non-Uniform Interrogatories, attached as Exhibits 1 and 2.  State Farm has objected to written discovery in this vein.  The reasons for the objections include the same arguments raised in this Motion, and disposition of this Motion will affect the ultimate responses provided, if any.

inordinate discovery and litigation burden on State Farm that is disproportionate to the needs of this case. It will also require introduction into evidence of non-party insurance claimants' personal information and massive claim files associated with each claim, all presumably without those non-parties' knowledge or consent to be involved in Plaintiffs' lawsuit. The non-parties will also become witnesses in this case and may have to testify, needlessly expanding both discovery and trial.  Most precariously, State Farm will need to bring its own bevvy of "good" claims as evidence to counter what Plaintiff cite as "bad" ones.  The case will become about fifty insurance claims – Plaintiffs' single claim plus forty-nine unrelated ones.

For all of these reasons, Plaintiffs' counsel and lay and expert witnesses, including claim handling "expert" Joseph Watkins, must be precluded from offering argument, fact testimony or opinion testimony regarding unrelated claim files. The only relevant issue is State Farm's conduct with regard to this insurance policy and the claim at issue in this case.

State Farm urges the Court to rule on this motion when it is fully briefed rather than treat this as a motion in *limine* and wait until the pre-trial motion stage of the case. This is necessary because a vast amount of discovery hinges on this issue.[2]  If the Court waits to grant the Motion, the parties will have spent enormous time and energy on fact and expert discovery into irrelevant and inadmissible issues.

## I.    FACTUAL BACKGROUND

Briefly, Plaintiffs sued State Farm for breach of contract and insurance bad faith after a dispute arose about the nature and extent of coverage available to compensate the Les for losses allegedly sustained during a fire that the Les assume occurred in May 2020 at their rental property.  They also allege State Farm failed to adequately pay an appraisal award that

---

[2] E.g., Exhibits 1 and 2.

1    this Court recently confirmed.

2    Plaintiffs have disclosed Mr. Watkins as an expert opinion witness "regarding State

3    Farm's pattern or practice relative to [the] way it adjusts appraisal awards…." In his opinion

4    affidavit, Watkins identifies eight unrelated insurance claims with State Farm, though

5    Watkins does not purport to have reviewed those files in support of his opinion. See opinion

6    affidavit, attached as Exhibit 3, at pp. 11-15. Plaintiffs disclosed the ten unrelated claims,

7    including the eight named by Watkins, as documents they may use to support their claims.

8    See Plaintiffs' First Supplemental Disclosure Statement, attached hereto as Exhibit 4 at p. 6-

9    7. Plaintiffs delivered six of the unrelated claim files as exhibits to the disclosure statement.[3]

10   Notably, <u>none</u> of the unrelated claims have been resolved on their merits. Certainly, none have

11   resulted in a precedential decision contrary to the positions State Farm has advanced in the

12   course of adjusting Plaintiffs' alleged loss here.

13   Watkins also asserts that State Farm's litigation of appraisal cases in <u>other</u>

14   <u>jurisdictions</u>[4] amounts to an "abuse of process that is play out across the country." See Exhibit

15   3 at 9. Watkins cites cases from Michigan, Tennessee, Colorado, Texas, Iowa, and Florida as

16   supportive of his opinion that State Farm's claim handling decisions here were not reasonable

17   or fairly debatable. See Exhibit 3 at pp. 9-10.

18   Plaintiffs have also disclosed their public adjusters, Daniel Townsend and John

19   McDougall, and their appraiser, Sam Fernandez, as persons who will testify regarding "the

20   appraisal process and any interactions they had with State Farm relative thereto." See Exhibit

21   4 at p. 2. The ambiguousness of this description opens the door to these fact witnesses piling

22

23   [3] The volume of documents in the six disclosed claim files almost certainly exceeds 30,000 pages. Naturally, that number will increase if Plaintiffs disclose the remaining four claim files.

24   [4] Watkins erroneously suggests that State Farm's position regarding the interplay of coverage disputes and appraisal demands has been rejected by courts in Arizona. See Exhibit 3 at pp.9-11. No Arizona appellate

25   court has spoken on the issue since the Arizona Court of Appeals in *Hanson v. Commercial Union Insurance Co.* held, relative to the appraisal panel: "It is certainly not their function to resolve questions of coverage and

26   interpret provisions of the policy." 150 Ariz. 283, 286 (App. 1986).

on their own personal experience with other unrelated and undisclosed claims with State Farm.

As detailed below, all of this evidence and testimony must be precluded because it is irrelevant and inadmissible to establish the reasonableness of State Farm's claim handling in this case. State Farm would like to receive a ruling on this issue when it is fully briefed because it impacts the scope of necessary discovery and trial.

## II.    LEGAL ARGUMENT

### A. Evidence Of Unrelated Claims/Lawsuits Is Not Relevant To State Farm's Compliance with This Contract or Reasonableness in Adjusting This Claim

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R Evid. 402.

Plaintiffs allege claims of breach of contract and insurance bad faith here. Both causes of action require a jury to evaluate whether the insurance company in this case violated the terms of this insurance contract or acted unreasonably in its investigation, evaluation, and processing of this claim under the facts and circumstances presented by this loss.

State Farm's processing of other claims (that have different parties, facts, policy language, and circumstances) is not relevant to a fact of consequence in determining whether State Farm breached this insurance contract or acted unreasonably in handling Plaintiffs' claim in particular. Evidence regarding State Farm's handling of other unrelated claims is plainly irrelevant and facially inadmissible. For this simplest of reasons, the parties should not be forced to engage in extensive and expensive discovery of these issues.

### B. Evidence Of Unrelated Claims Is Not Admissible To Prove Conforming Conduct

Per their disclosures, Plaintiffs will seek to introduce evidence of unrelated claims and extra-jurisdictional case law to show State Farm has a "pattern of practice in the bad faith adjustment of appraisal awards similar to that experienced by the Les." See Exhibit 4 at p. 6. Even if State Farm's conduct relative to unrelated claims were relevant, "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."   Fed. R. Evid. 404(b)(1). For this additional reason, evidence of other claims is inadmissible.

### C. Opinion Testimony Premised On Mere Allegations of Insurance Bad Faith Is Not Competent Evidence

Opinion testimony, whether introduced by lay or experts, is admissible only if it is relevant and based on sufficient facts or data. Fed. R. Evid. 701, 702(b). Here, it is not. Even if evidence of the unrelated claims/cases were relevant and admissible (which State Farm denies), that evidence would only be probative of a pattern of conduct if the facts and circumstances in each of the unrelated claims/cases were substantially similar *and* State Farm's conduct was actually proven to be wrongful or unreasonable.

None of the unrelated claims have been adjudicated in another forum. At least three of the ten unrelated claims ended in settlement untethered to any finding or admission of fault.[5] The remaining unrelated claims are in various stages of discovery. As such, the unrelated claims that form the basis of Watkins' testimony are nothing more than unproven allegations of bad faith conduct based on limited personal experience in claims/cases he or Plaintiffs' counsel happen to have been involved with. The mere existence of complaints and criticism (and by interested persons no less) is not reliable, relevant, admissible evidence of misconduct. Absent an adjudication or admission that State Farm's conduct was wrongful (of

---

[5] Not coincidentally, Plaintiffs' counsel was designated a "pattern of practice" expert on one the settled matters, and was counsel for the insured on at least one other.

which there are none) the unrelated claims/cases do not provide a reliable basis upon which to assert that State Farm has engaged in bad faith claim handling, let alone a pattern of such. *See* Fed. R. Evid. 701, 702(b) (requiring opinion testimony be helpful and/or based on sufficient facts or data). The evidence is not admissible.

### D. Investigating Similarities Between This Case And The Unrelated Claims Is Invasive And Disproportionate To The Needs Of The Case

Alternatively, if Plaintiffs are permitted to introduce opinion testimony premised on the unadjudicated allegations of misconduct, State Farm must be permitted to impeach the basis of the proffered opinion testimony by arguing and presenting evidence that those unrelated cases are not substantially similar to Plaintiffs' circumstances and/or are not representative of wrongful or unreasonable conduct. Thus, State Farm is entitled to discovery into each of the ten unrelated claims to rebut Plaintiffs' arguments that its claim handling in each case was wrongful or unreasonable, and to rebut that the circumstances of each case are sufficiently analogous to those presented here so that the jury can draw the inference of a pattern. *See Slade v. Schneider*, 212 Ariz. 176, 180 (App. 2006) (recognizing Rule 26(b)(4) favors "wide-open discovery of experts" and the basis for their opinions). In effect, fairness requires the parties fully litigate the ten unrelated and unresolved claims.

Moreover, evaluating substantial similarity requires full disclosure, analysis, and discussion of ten full insurance claim files (so far). Those files will contain personal information and property details about non-party insureds who are strangers to Plaintiffs and this litigation. Allowing Plaintiffs to present opinion testimony based on these ten files will create significant procedural hurdles in the form of permissions, waivers, redactions, protective orders, and other mechanisms necessary to protect those claimants' privacy interests.

Fair investigation into the substance of those claims presents additional challenges. To fairly defend against Plaintiffs' witnesses' false assertions that State Farm acted unreasonably and in bad faith on each of those ten occasions, State Farm will, at a minimum, need to depose the claimants and claim specialists involved in each claim. State Farm may also wish to depose the investigators, attorneys, appraisers, and/or contractors, as necessary to develop the underlying facts of each of the ten claims. State Farm already faces the burden of retaining an expert to review each claim file and related depositions and provide an opinion on its agents' reasonableness and compliance with the applicable standard of care in each of ten cases. Relieving that burden is one of the purposes of this Motion.

The costs to safeguard the private information and obtain the necessary evidence (while continuing to litigate and defend against the allegations that State Farm's conduct was wrongful in this case) will be immense, far in excess of the value of the case itself. Litigating these issues will also add multiple days to the anticipated length of trial.

Compounding the above identified problems many times over, Plaintiffs cannot limit a "pattern of practice" analysis to its ten hand-picked claims. State Farm would be entitled to resist Plaintiff's allegations of a negative pattern of practice by establishing State Farm's positive pattern of practice through the introduction of scores more unrelated claims of State Farm's choosing. The case would not escalate by a factor of ten, but by a factor of fifty.

Plaintiffs' already questionable evidence regarding the unrelated allegations of bad faith should be precluded for the additional reason that the staggering time and financial burden of litigating the evidence is disproportionate to the needs of the case.

### E. Plaintiffs' Witnesses Do Not Have Sufficient Knowledge Or Experience To Provide Reliable Pattern Or Practice Evidence

Even if the evidence of unrelated claims were relevant, it is not reliable. According to public information, State Farm is the leading automobile and home insurer in the United

States. *See* State Farm announces 2021 financial results, February 25, 2022 www.newsroom.statefarm.com/2021-by-the-numbers (last visited 2 June 2022). In 2021, State Farm serviced 87 million policies and accounts throughout the country and processed more than 24,000 claims <u>each day</u>. (*Id.*)

Despite these staggering figures, Plaintiffs purport to establish that State Farm has a pattern and practice of handling claims of property damage in a certain manner based on only ten claims. Even if a large portion of those claim statistics relate to other types of policies and losses, the unrelated claims would still represent only a tiny fraction of property loss claims, and provides an unreliable basis for the proffered opinions.

**F. Non-Arizona Court Decisions In Unrelated Non-Arizona Claims Are Irrelevant**

Plaintiffs' "pattern of practice" theory also extends to foreign case law about unrelated claims, alleging that State Farm has a pattern of disregarding decisions from Michigan, Tennessee, Colorado, Texas, Iowa, and Florida on the issue of whether appraisers are permitted to decide causation. "State Farm has litigated and lost the identical issue… [yet] continues its efforts to obstruct the appraisal remedy here in Arizona." See Exhibit 3 at pp. 9-10.

As an initial matter, the law of other states is immaterial to <u>this</u> case pending in Arizona District Court. Appraisal law is nuanced and different in every state. No <u>Arizona</u> court has held that an appraisal panel tasked with setting the "amount of loss" is empowered to resolve disputes about causation or coverage. Courts applying <u>Arizona law</u> have held that appraisal panels are <u>not</u> empowered to make determinations of causation. *See, e.g., San Souci Apts. v. Nat'l Sur. Corp.*, 2013 WL 428091, *1-2 (D. Ariz. 2013) ("The issue of whether the roof tiles were damaged by the hail storm and whether the source of the damage is outside of the policy limits is not a dispute about the amount of loss that all parties agree to be covered. It is,

therefore, not within the scope of the appraisal provision."); *Speros v. Sentinel Ins. Co.*, 2018 WL 1536389, \*5 (D. Ariz. 2018) ("It is for the Court, or the ultimate finder of fact, to determine causation of the damage to the home – in other words, whether the appraisers are right or wrong about the scope of causation.").

Furthermore, <u>all</u> of the authority Watkins cites is either wholly distinguishable or actually supports State Farm's interpretation of the policy. For example, Michigan's expansive interpretation of appraisal powers is based on a statutory scheme unlike any found in Arizona. *See, e.g., Hart v. State Farm*, 556 F. Supp. 3d 735 (E.D. Mich. 2021). Some of the Colorado, Tennessee, and Texas cases that Plaintiffs cherry-pick quotes from resolve an entirely different question of whether the underlying dispute triggers the appraisal provision at all – not the <u>scope</u> of the appraisal panel's authority that is at issue here. *See Garcia v. State Farm*, 2021 WL 4439792 (D. Colo. 2021); *State Farm v. Harper*, 2022 WL 989088 (M.D. Tenn. 2022); *Johnson v. State Farm Lloyds*, 204 S.W.3d 897 (Tex. App. 2006). Other courts in Tennessee, Texas, and Iowa are consistent with Arizona's and State Farm's position that the appraisal panel's task is "to decide the amount of loss, rather than issues of coverage or causation," *Ingram v. State Farm*, 2021 WL 6133771 (E.D. Tenn. 2021), or hold that parties may disregard appraisal awards if the panel goes "beyond the damage questions entrusted to them" by considering causation, *Johnson v. State Farm Lloyds*, 290 S.W.3d 886 (Tex. 2009) ("No matter what the appraisers say, State Farm does not have to pay for repairs due to wear and tear or any other excluded peril because those perils are excluded."); *see also North Glenn HOA v. State Farm*, 906 N.W.2d 204 (Iowa App. 2017) ("Additionally, the causation determinations by the appraisers may be subject to further review by the district court."). None have any application here. At worst, Arizona courts, and others, are split on the issue.

Watkins does not identify any binding <u>Arizona</u> authority supporting his opinion because none exists.[6] His reliance on extrajurisdictional authority that is distinguishable (or favorable to State Farm) is an insufficient basis upon which to opine State Farm took an unreasonable legal position in this Arizona claim, and it must be stricken.

### G. Evidence Of Unrelated Claims Is Confusing, Misleading, and Unfairly Prejudicial

Even if Plaintiffs' argument and evidence were relevant and admissible, it should still be excluded "if its probative value is substantially outweighed by a danger of . . . . unfair prejudice, confusing the issues, misleading the jury, . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Application of this balancing test requires preclusion of testimony based on unrelated claims and out-of-state court decisions.

First, as explained above, the probative value of the evidence is minimal. To prevail at trial, Plaintiffs must prove that State Farm breached <u>this</u> contract and/or acted unreasonably in handling <u>this</u> claim. Even if Plaintiffs had evidence that the unrelated claims were all factually similar to this claim, even if the unrelated claims constituted anything more than mere allegations of misconduct, and even if the unrelated claims were representative of State Farm's conduct as a whole, evidence of a pattern of misconduct is not admissible to prove State Farm acted unreasonably in its adjustment of <u>this</u> claim. Fed. R. Evid. 404(b). And, the out-of-state court cases are not indicative of the current state of Arizona insurance law regardless how much Plaintiffs' representatives would like them to be.

Second, introducing evidence of unrelated claims and out-of-state court cases is highly likely to consume, confuse, and mislead the jury and cause State Farm undue prejudice. The jury will be instructed that its task at trial is to determine whether State Farm breached <u>this</u>

---

[6] Watkins' reliance on non-binding superior court minute entries in *Nelson* and *Seip* is also unavailing. See Exhibit 3 at p. 10. Those matters were decided during the pendency of this lawsuit. They are also distinguishable on their own terms.

contract and/or acted unreasonably in handling <u>this</u> claim. The jury will not understand why it is being presented with evidence of ten other claims and a host of out-of-state cases, and will be misled into thinking that the conduct in those cases has any bearing on the individual facts and circumstances presented by <u>this</u> case.

The jury will also be confused when it hears evidence regarding the law in other states that does not apply in Arizona and misled into believing that that law has any application here. State Farm will be unfairly prejudiced by those implications, and unfairly burdened with the tasks of defending against both its handling of Plaintiffs' specific claim and its handling of the unrelated claims/cases, while also explaining the applicable Arizona law and the differences and similarities between Arizona and other states' laws in order to demonstrate those claims/cases are not similar. To the extent other states' laws are consistent with Arizona law, the evidence is cumulative. This is all in addition to the fact that trial time and efforts related to ten additional claims/cases will be a massive waste of judicial resources.

When these circumstances are weighed against each other, the balance tips heavily in favor of excluding the tenuously associated argument and evidence.

## III. <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs should not be permitted to introduce (and State Farm should not be forced to conduct discovery regarding) argument and evidence that is premised on unadjudicated allegations of misconduct in unrelated claims or out-of-state court cases applying extra-jurisdictional law. State Farm respectfully requests the Court so order.

DATED this 3rd day of May, 2023.

BROENING OBERG WOODS & WILSON, P.C.

By _/s/ Tyler M. Abrahams_____
    Tyler M. Abrahams
    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2023, I electronically transmitted the attached to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert D. Ryan, Esq.
rob@robertdrvan.com
LAW OFFICES OF ROBERT D. RYAN, P.L.C.
343 W. Roosevelt Street, Suite 220
Phoenix, AZ 85003
(602) 256-2333

By */s/ Joann Mendoza*