**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sally Le, wife; and Cuong Le, husband,<br><br>   Plaintiffs,<br>v.<br><br>State Farm Fire and Casualty Company, a foreign corporation; et al.,<br><br>   Defendants. | CV 22-00044-TUC-SHR (MAA)<br><br>**ORDER** |

  Pending before the court is a Motion to Preclude Evidence of Unrelated Claims and Lawsuits, filed by the defendant, State Farm, on May 3, 2023. (Doc. 83). The motion appears in the court docket as a motion in limine. *Id.* The plaintiffs filed a response on May 15, 2023. (Doc. 86). Replies are not permitted in support of a motion in limine. LRCiv 7.2 (l). State Farm has filed a certificate of consultation in good faith, which is required for an opposed motion in limine. *Id.*, (Doc. 89).

  The case has been referred to Magistrate Judge Ambri for pretrial proceedings in accordance with the Local Rules. (Doc. 16); (Doc. 39); (Doc. 82). Inasmuch as the movant asks this court to adjudicate the motion without delay, the court finds the motion suitable for decision without oral argument. *See* LRCiv 7.2(f).

  The motion will be denied. State Farm has not shown that evidence of unrelated claims and lawsuits would never be relevant and admissible at trial.

Background

The Les own a rental property on E. Beverly Street in Tucson, Arizona. (Doc. 1-3, p. 2), (Complaint). The property was damaged by fire on or about May 2, 2020. (Doc. 1-3, p. 3). The Les reported the fire to their insurer, State Farm, which accepted coverage. *Id.*, p. 4. State Farm paid the Les approximately $63,300 on their claim. *Id.*, p. 5. The Les believed that State Farm inadequately valued their loss and asserted their right to an appraisal pursuant to the terms of the insurance policy. *Id.*, p. 5. The appraisal panel eventually issued an award that assessed the "replacement cost" at $193,509.49 and the "actual cash value" at $177,398.90. (Doc. 1-3, p. 5); (Doc. 11-1, pp. 2, 91). State Farm objected to the panel's award but paid the Les a supplemental sum of $27,767.99, which combined with its earlier payment is still less than the amount awarded by the appraisal. (Doc. 1-3, pp. 5-6).

On December 27, 2021, the Les filed suit in Pima County Superior Court against State Farm claiming breach of contract and breach of the duty of good faith. (Doc. 1-3). They seek compensatory, general, and punitive damages. (Doc. 1-3, p. 11). On January 26, 2022, State Farm removed the action to this court based on diversity. (Doc. 1). On February 23, 2022, the Les filed a motion to confirm the appraisal award pursuant to A.R.S. § 12-1511. (Doc. 11). On December 27, 2022, this court granted the motion. (Doc. 56). Discovery continues.

The plaintiffs have disclosed an expert witness, Joseph W. Watkins. (Doc. 83, p. 2); (Doc. 83-3, pp. 2-30). Watkins opined, among other things, that "State Farm's actions nationwide and in Arizona are evidence of a clear pattern & practice to intentionally avoid and frustrate the intended purpose of the appraisal clause which, as State Farm argued in 2007, was intended to provide a speedy, inexpensive and complete resolution on damage determinations." (Doc. 83-3, p. 30). In support of his opinion, Watkins referred to eight other State Farm cases where Arizona homeowners reported water loss, plumbing failure, or storm damage. (Doc. 83-3, pp. 21-23). Those insureds, like the plaintiffs, received from State Farm what they believed were unreasonably low loss estimates, demanded an appraisal, and obtained a much larger

damage valuation. *Id.* In many of those cases, like here, State Farm failed to pay the total appraised damages. *Id.*

The plaintiffs have disclosed two additional property claims that they believe show that State Farm acted in bad faith in the past and prove that State Farm acted in bad faith in this case. (Doc. 83, pp. 2, 4). State Farm refers to these ten claims collectively as the "unrelated claims." (Doc. 83, p. 2).

In the pending motion, State Farm asserts that "evidence of unrelated claims/lawsuits is irrelevant and inadmissible to prove State Farm breached this insurance contract or acted unreasonably in handling this claim." (Doc. 83, p. 2) (emphasis in original). Moreover, it argues that discovery into these unrelated claims "will place an inordinate discovery and litigation burden on State Farm that is disproportionate to the needs of this case." (Doc. 83, p. 3). Accordingly, it moves that this court issue an order precluding the use of any evidence relating to these nonparty claims. State Farm urges the court "to rule on this motion when it is fully briefed rather than treat this as a motion in limine and wait until the pre-trial motion stage of the case." *Id.*

The parties are still in the discovery stage. It is therefore impossible to predict with certainty what evidence the plaintiffs will offer at trial and in what form that evidence will be presented. State Farm's motion, therefore, can only be granted if "evidence of unrelated claims/lawsuits" would *never* be relevant and admissible to prove *any* aspect of the plaintiffs' case. The court finds to the contrary that evidence of State Farm's claims handling in unrelated claims or lawsuits could be relevant and admissible.

Discussion

The Les claim, among other things, that State Farm acted in bad faith and punitive damages are warranted. The court will consider whether evidence of unrelated claims and lawsuits would be relevant to these aspects of the plaintiffs' case. *See Fed.R.Evid.* 401; *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 496, 733 P.2d 1073, 1079 (1987) ("Relevancy is

- 3 -

not an inherent characteristic of proffered evidence; instead, it is the relationship between the proffered evidence and the fact sought to be proved.").

"An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes a claim (an 'objective' test), and either knows it is acting unreasonably or acts with such reckless disregard that such knowledge may be imputed to it (a 'subjective' test)." *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 597–98, 277 P.3d 789, 794–95 (Ct. App. 2012).

If these other claims or lawsuits are sufficiently similar to the case at bar, a reasonable trier of fact could find that State Farm engages in a pattern or practice of lowballing homeowners when their claims are initially adjusted and frustrating the process when the homeowners demand an appraisal. And if State Farm has such a pattern or practice, a reasonable trier of fact could conclude that State Farm knew that it was acting unreasonably toward the Les or "acted with such reckless disregard that such knowledge may be imputed to it." *Id.*; *see, e.g., Shenon v. New York Life Ins. Co.*, 2020 WL 1317722, at *5 (C.D. Cal. Mar. 16, 2020) ("The Court agrees that evidence related to NYL's handling of other claims and lawsuits could be relevant to show a pattern of NYL's claim handling process that is related to Shenon's bad faith claim.").

"To recover punitive damages, the plaintiff must show 'something more' than the conduct necessary to establish the tort of bad faith." *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 604, 277 P.3d 789, 801 (Ct. App. 2012) (punctuation modified). "[Arizona] courts have developed a shorthand reference for this 'something more,' requiring the plaintiff to prove that defendant's evil hand was guided by an evil mind." *Id.* "The requisite evil mind may be manifested in either of two ways." *Id.* "It may be found where defendant intended to injure the plaintiff." *Id.* "It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.*

"[U]nless the defendant is willing to take the stand and admit its 'evil mind,' the plaintiff must prove entitlement to punitive damages with circumstantial evidence." *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 498, 733 P.2d 1073, 1081 (1987). "Thus, whether the defendant intended to injure the plaintiff or consciously disregarded the plaintiff's rights may be suggested by a pattern of similar unfair practices." *Id.*

The court finds that evidence of State Farm's handling of other claims and lawsuits could be relevant to show that State Farm intentionally injured the plaintiffs or "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm" to the plaintiffs. *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. at 604, 277 P.3d at 801. If these other claims and lawsuits are sufficiently similar to the Les', a reasonable trier of fact could find that they are relevant to show State Farm's motive or state of mind when initially adjusting the Les' claim or engaging in the appraisal process. *See, e.g., Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 498, 733 P.2d 1073, 1081 (1987) ("Boettcher's testimony was offered to show that Allstate engaged in a conscious course of conduct, firmly grounded in corporate policy, which denied Hawkins and countless other insureds the actual cash value of their property. The evidence was not offered to establish any particular conduct regarding the Hawkins' claim. This testimony was offered to explain Allstate's motive or its state of mind when dealing with the Hawkins and other insureds.").

State Farm further argues that even if the evidence were relevant, it would be inadmissible because "evidence of any other crime, wrong, or act is not admissible to prove a person's character[1] in order to show that on a particular occasion the person acted in accordance with the character" citing Fed.R.Evid. 404(b)(1). (Doc. 83, p. 6). There is, however, an exception to this general rule.

---

[1] The court assumes, as do the parties, that State Farm is a "person" with a "character" for the purposes of Fed.R.Evid. 404. *But see* Fed.R.Evid. 406 (distinguishing between "a person's habit" and "an organization's routine practice").

Federal Rule of Evidence 404(b)(2) allows evidence of prior wrongful acts if offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Here, the plaintiffs could offer evidence of State Farm's handling of unrelated cases to show that it has a pattern or practice of acting adverse to the interests of its insureds and its actions in the pending case were not a mistake or accident. The court concludes that evidence of State Farm's handling of other claims and lawsuits could be relevant and also admissible. *See, e.g., Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 499, 733 P.2d 1073, 1082 (1987) (Evidence of insurer's prior practices was admissible under Ariz.R.Evid.404(b) to prove "motive, intent or absence of mistake or accident" and relevant to prove the insurer's "improper motives for purposes of punitive damages" and "to establish a prima facie case of the tort of bad faith."); *see also* Fed.R.Evid. 406 ("Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice.").

State Farm notes that expert testimony is only permitted if that testimony "is based on sufficient facts or data." (Doc 83, p. 6); Fed.R.Evid. 702(b). It maintains that evidence of unrelated claims would not be sufficient to support the plaintiffs' expert's opinions because they have not been "adjudicated" and are therefore "unproven." (Doc. 83, p. 6). Moreover, they consist of a very small subset of the total number of claims that State Farm must adjust every year and may not be representative of State Farm's routine practice. (Doc. 83, pp. 8-9).

The court agrees that the unrelated claims would not be sufficient *by themselves* to support the expert's opinion. They may, however, constitute part of the "facts and data" that the expert must rely upon to support his opinion. Fed.R.Evid. 702(b). It may be that some of these unrelated claims are not finalized, not adjudicated, from a different jurisdiction, or otherwise dissimilar to the case at bar. These factors, however, generally go to the weight of the evidence rather than to its admissibility. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 499, 733 P.2d 1073, 1082 (1987) ("Remoteness in time goes to the weight of the evidence, not its admissibility."); *see also* Fed.R.Civ.P. 406 (advisory committee notes, 1972 Proposed Rules)

(rejecting the requirement that "evidence of the routine practice of an organization be corroborated as a condition precedent to its admission in evidence" because lack of corroboration "relates to the sufficiency of the evidence rather than admissibility").

State Farm further argues that permitting evidence of unrelated cases and lawsuits would force it to engage in extensive discovery which would be disproportionate to the needs of this case. State Farm insists that it "will, at a minimum, need to depose the claimants and claim specialists involved in each claim." (Doc. 83, p. 8). "State Farm may also wish to depose the investigators, attorneys, appraisers, and/or contractors, as necessary to develop the underlying facts of each of the ten claims." *Id.* In sum, State Farm argues that evidence of unrelated cases should be precluded "for the additional reasons that the staggering time and financial burden of litigating the evidence is disproportionate to the needs of the case." *Id.* The court is not entirely convinced.

If State Farm feels compelled to spend a "disproportionate" amount of time on these unrelated cases, it may do so. It is entitled to conduct its pre-trial litigation in whichever way it deems appropriate, subject to the Rules, of course. *See, e.g.,* Fed.R.Civ.P. 30(a)(2) (limiting the number of depositions). The court will not, however, limit the evidence that the Les are allowed to present simply because State Farm believes that preparing to meet that evidence would be too burdensome. State Farm has not cited any cases where the Federal Rules of Civil Procedure or the Federal Rules of Evidence permitted this, and the court has found none. The Rules do state that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional* to the needs of the case. . . ." Fed.R.Civ.P. 26(b)(1) (emphasis added). And if the Les demand that State Farm engage in discovery that is not proportional to the needs of the case, State Farm could file a motion for a protective order. *See* Fed.R.Civ.P. 26(c). The Les, however, are not demanding that State Farm spend a "disproportionate" amount of time investigating these ten cases. To the contrary, they are disclosing to State Farm information that they have about these ten cases. If State Farm

believes it should conduct a follow-up inquiry into these cases it may do so, but it cannot argue that the Les are improperly forcing it to do so.

Finally, State Farm argues that evidence of unrelated claims will be confusing, misleading, or unfairly prejudicial. (Doc. 83) (citing Fed.R.Evid. 403). It is certainly possible that some of this evidence will be inadmissible at trial under that Rule. But as the court stated above, the parties are still in the discovery stage, and it is impossible to know for certain at this point what evidence will be presented at trial and in what form. Consequently, State Farm's motion can be granted only if there is no possibility that any of the unrelated cases or lawsuits will be admissible at trial, and the court finds to the contrary.

IT IS ORDERED THAT the Motion to Preclude Evidence of Unrelated Claims and Lawsuits, filed by the defendant, State Farm, on May 3, 2023 is DENIED. (Doc. 83).

DATED this 8th day of June, 2023.

Honorable Michael A. Ambri
United States Magistrate Judge